All right, we hear argument in the United States v. Muslim. May it please the Court, my name is Kimberly Albrow. I'm here on behalf of the appellant Shahid Muslim. The first issue I was going to address is the Count 7 conviction that had an underlying crime of violence. I apologize for the late notice. I found a case right when I was leaving my office, which I otherwise would have put in a 28J letter, but it was a case out of the Seventh Circuit issued on August 29, 2019, and the citation is a Westlaw citation, 2019 WL4071630. The case is called Hayes. The problem is you didn't object to the instruction. You mean at the trial court level? Yeah. The jury instruction? Well, this case, this particular case, Hayes, addresses 1952, and it's under A to B. I know, but you didn't object to the instructions that the district court gave on that. But I think the instructions are irrelevant. If the crime of violence is an element of the offense, it's a matter of whether he could be. Whether it's an element of the offense or not, you have a right, you have an obligation to raise your argument before the district court so the district court can address it. I think the nature of the error doesn't alleviate your obligation to raise an objection. Well, if it's an element of the offense, we would assert even under plain error review that. Well, fine. We're under plain error review now, and the difficulty I have is with the third and fourth. I mean, let's assume that you're right with respect to, you know, physical assault under North Carolina law is not a crime of violence. How can there be a miscarriage of justice here or deprivation of substantial rights? Given the testimony that the jury heard, D.T.'s testimony was that, you know, on the night of the assault, Muslim told D.T. to put her arms out and touch her nose, and then when she did so, he just punched her hard right in the stomach. And her testimony, I went into the record, and her testimony is, Muslim kept punching me, and then he grabbed me by my hair and took me to the bathroom and then just had my head on the tub and was holding my hair up, and then he just kept talking to me and punching me until I threw up. And then I went outside to throw up. And the same testimony was given by an eyewitness, Mr. Muldoo. So Muldoo, Muslim told her to touch her nose, and he punched her in the stomach around the area. She flipped over, like tilted over, and he grabbed her by the hair, took her in the restroom, shut the door, turned up the shower, the water running loud, and I just went outside on the balcony. I just prayed. I don't know. And the jury heard evidence that this could not be other than a crime of violence. I mean, the sex enslavement camp that Mr. Muslim was running was bad enough. When you compound it with just beating a girl to pulp in a bathroom, how is that a miscarriage of justice under plain air review? And the jury found a crime of violence after listening to horrific evidence of physical assault, and the government was required to prove a crime of violence, and they did exactly that. And when we're on the fourth prong of plain air review, a strong and compelling showing of violent conduct overcomes any claim of plain air. That's the thing. There's no deprivation of substantial rights, and there is no miscarriage of justice in this case, given what he did to that young woman. I understand that the facts of this case are hard to read, and I understand your position on that, but the issues largely raised relate to the legal stance, and I think that when someone is convicted of a crime when an element wasn't proven, I think that that can, it certainly can be reversed. It was proven. The government put on a very strong factual case. There was only one crime of violence at issue here. The government put on a substantial case that there was a crime of violence committed. It was committed in furtherance of the Travel Act violation. It was brutal beyond belief, and you didn't even raise an objection at the trial because you knew it was a crime of violence. You had other problems, but you didn't say, oh, this isn't a crime of violence. You couldn't have said that. You knew it was. That's why you didn't object. Well, I wasn't the trial attorney. I know. I'm not blaming you, but you, unfortunately, for you, you are, through no fault of your own, saddled with that failure. Well, I can't speak to why, but that may go to some of Mr. Muslim's other complaints, which he made repeatedly to the court about the effectiveness of his counsel as far as why that wasn't raised. The problem with the whole trial is that you have a defendant here who is switching his mind constantly. You know, it's on again, off again. The district court is trying to pin him down, his counsel down, and he changes his mind completely. It is the worst kind of trial for a district court to have to handle. Judge Conrad, in my judgment, showed some admirable patience in light of the on again, off again behavior that was going on in front of him. These things are a nightmare for conscientious district judges who are trying to assure that a defendant gets their rights. And this, you know, his conditions about whether he wanted to take the stand and what his state of health was and, you know, all the rest. You know, he didn't say the same thing from one minute to the next. Judge Conrad's inquiring of people. He's trying to find out an answer conscientiously, and then he's met with this. There are an unusual number of pro se filings in this case, and again, an issue that I raise peripherally, which is usually addressed in the 2255, is the ineffective assistance of counsel claim. I believe a lot of Mr. Muslim's pro se filings went to that issue, and that's why he felt the need to. He couldn't even understand. He couldn't even agree on what lawyers he wanted. You know, he tried to go through three. He didn't get along with any of them. The whole thing is a nightmare. And despite it all, you know, the judge labored conscientiously to make sure that justice was done in this case and that the defendant's right was preserved. And the jury heard this case, and they really didn't like using young women for prostitution purposes. They found that to be a violation of a number of criminal laws, and I can't see whether the jury's verdict was in any way erroneous. I would address the denial of the motion to withdraw as counsel because I think the underlying decision on that was that Mr. Muslim had was the result of that he wouldn't allow his counsel to represent him on the sentencing. Mr. Beam was the fourth attorney before Mr. Muslim at the trial level, and it wasn't just, though, that Mr. Muslim Let me find something wrong with everybody. I mean, he does not have a right to choose his counsel. It's not a retained basis. And maybe, you know, there's one situation where somebody doesn't get along with counsel and you grant leave to withdraw, but here it's a serial matter, one right after another after another, something wrong with all of them. Well, Your Honor, I am his fourth counsel as well at the appellate level, but I would say, again, notwithstanding the facts of this case and how difficult it may be to read those facts, I'm trying to focus on the legal issues. I couldn't get along with counsel because counsel refused to make absolutely absurd allegations. Among the allegations being a conspiracy among the judges, lawyers, court reporters, and everything, no lawyer worth his salt is going to come forward with something that ridiculous without any kind of supporting basis. And that's, you know, he isn't going to credit the professional ability of lawyers who want to do their jobs. He wants them to walk the plank with professionally unethical arguments. Well, the issue that I raised related to the denial of the motion for Mr. Beam to withdraw, that wasn't something that was just based on Mr. Muslim's assertions or pro se filings. That was something that Mr. Beam also asserted, and he had consulted with the State Bar. So he was put in an untenable position of being told by the Bar that it would be unethical for him to continue representing Mr. Muslim, while, on the other hand, Mr. Muslim is telling him, you can't speak on my behalf because you have this conflict, as confirmed by the State Bar. And he was so Mr. Beam could not advocate for Mr. Muslim at sentencing. And I included in the brief all the things that I noticed that probably would have been objections to the PSR if Mr. Beam had been in a position to be able to make those objections. So that wasn't just based on Mr. Muslim's assertions. That also was something that Mr. Beam attested to. The basic nature of the conflict didn't arise over a particular sentencing enhancement. It arose over the fact that Mr. Muslim wanted Mr. Beam to make totally absurd, fanciful allegations. Well, Mr. Beam did talk to the Bar about his issues, and the Bar did tell him that he had this conflict and should withdraw, but he was not allowed to do so. So when it came down to sentencing, he wasn't able to advocate on his behalf. And I think the legal arguments made in the briefs show the legal framework with which that fits in. As far as the expert testimony for Count 3, which was the production of the video displaying a minor, the key problem with that is that the district court didn't analyze why it was relevant and reliable once Mr. Muslim's counsel made the motion for that expert testimony to be excluded. And this was a very – not that the novelty of the testimony is enough for it to be excluded, but there are some factors to be considered. They're non-exclusive, but the district court gave no factors as for why it was allowing this testimony to go forward, and that the expert that was allowed to testify is the only one who established the interstate nexus. And without the interstate nexus, Mr. Muslim could not be convicted. Even assuming you're right, and it's a discretionary call about that, the matter about which you're complaining was so incredibly tangential to what the whole trial was about, whether something was taken with a certain kind of camera or not. I mean, it was pretty peripheral. Well, it's an element of the offense, just like the crime of violence is an element of Count 7. You're talking about the factual matter here. It is a conviction that could have consequences on his sentence. It could have consequences on his placement at the BOP. So it is relevant whether someone is actually proven beyond a reasonable doubt on every element of the offense. And Mr. Muslim asserts that the Count 3, with the expert testimony, is erroneously admitted. That count could not have been proven. That's a quintessential discretionary trial court call, and I don't see anything. I can't see that he made any error, much less that it was harmful in any way. It's not a constitutional error of any sort. You're correct. The abuse of discretion is for the expert testimony, but the Count 7 with the crime of violence, that's a de novo review because it's a legal issue. There's also, Mr. Muslim submits an abuse of discretion for denying the motion for continuance. The case law is in the briefs, but basically there needs to be something more than just, oh, this doesn't fit the court's schedule. I believe that was outlined. Wasn't the motion for continuance made at a belated date? It was after Mr. Wright, the trial attorney, had received copious amounts of discovery the week of trial, and also that is an issue that was based in large part on Mr. Wright's issues and conflicts and time constraints. Well, I see the reason that these motions for continuance are given to the discretion of the district judge, and that is it's not only the district judge's own schedule, but you've got witnesses, and in this case some of the witnesses were scared to death of testifying and were reluctant to come forward, and you've got jurors who have their own lives, and you say, oh, it's just a continuance. But the point is it throws everything off, and in this kind of trial where you have essentially enforced prostitution of minors, you normally have reluctant witnesses who are afraid of the consequences if they testify against someone like Mr. Muslim because he has a history of intimidation and violence against the people that cross him. And the district court's entitled to take into account the nature of the witnesses that are coming forward, the timeliness of the motion, which was late in the day, the fact that there are jurors and a jury denier to be drawn. To find an abuse of discretion under these circumstances, we'd be drawing trial judges short across the circuit. Do you have any further points? If I could just respond briefly to that, my time is up. You certainly may respond. Well, all I would like to say is that, again, under this abuse of discretion, and you're pointing out the timeliness of the motions, that is something that Mr. Muslim has repeatedly said goes to his ineffective assistance of counsel claims. All right. Thank you for your time. Thank you. Ms. Rowe. Thank you. May it please the Court. The defendant received a fair trial. District judge made the judge's discretionary rulings, acted within his discretion when he did so, and the defendant received a procedurally reasonable sentence. You've heard some of the comments from the Court. Do you have anything to add? I do, a couple of things. The primary thing I would add is that I noticed in preparing for oral argument that on the sentencing issues, I stated in our brief that the defendant would have to show, I think I said, seven levels of difference between the errors to make a difference on harmless error. I overlooked that there was actually a five-level departure, and let me find exactly what provision that was under. In the end, in other words, his guideline range was so high that it would require a 12-level error because it got him up to 54. So it was reduced down to 43. He would have to show errors that cumulatively affected him on 12 levels. He doesn't even allege that. Those are under plain error review in any event. So I just wanted to just note that because I got the total offense level wrong in the brief. It should have been 54. How many enhancements would we have to? You would have to do all of them, and then it wouldn't be enough, is my point. It would be all of them, and it wouldn't get him enough. I think otherwise, if this Court doesn't have questions, I mean, we think that the – We're happy to rest on our brief. All right, fine. Thank you, Your Honor. Ms. Albro, you have time for rebuttal. There's not much for me to rebut. I would just say I know this case had a lot of issues, so if the Court has any questions about any of the issues, I would address those. All right, well, we have your brief, and we appreciate it. Thank you. All right. Thank you. We will adjourn court and come down and agree counsel. This honorable court stands adjourned, sign and die. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, James A. Wynn Jr., Julius N. Richardson